IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| TOM FERGUSON and<br>GREGG BROWNE, | § <br> § <br> § | |
| Plaintiffs, | § <br> § | |
| v. | § <br> § | No. 5:22-CV-182-H |
| SOUTHWEST REGIONAL PCR, LLC,<br>d/b/a MICROGENDX, | § <br> § <br> § | |
| Defendant. | § <br> § | |

### FINDINGS, CONCLUSIONS, AND
### RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE[1]

Defendant Southwest Regional PCR, LLC, doing business as MicroGenDX, LLC (MicroGen) failed to provide sufficient and timely discovery responses. So, Plaintiffs Tom Ferguson and Gregg Browne (collectively, Plaintiffs) filed a motion to compel, which the Court granted in full. MicroGen still did not provide the required discovery, prompting Plaintiffs to file the instant Motion for Sanctions, asking the Court to (1) designate certain facts as established, (2) alternatively or in addition to such designation, bar MicroGen from using certain evidence, and (3) award attorney's fees and costs. ECF No. 43. MicroGen concedes it did not timely comply with the Court's discovery order but argues that the sanctions Plaintiffs seek—effectively directing adverse inferences and/or prohibiting MicroGen from using evidence—are not appropriate under the circumstances. ECF No. 80.

Despite MicroGen's lack of prompt, or full, compliance, the undersigned concludes that designating as established the facts requested by Plaintiffs would be inappropriate, given that

---

[1] The Honorable James Wesley Hendrix, United States District Judge, has referred the motion to the undersigned United States Magistrate Judge for recommendation. ECF No. 75.

(1) MicroGen did not have prior notice of the sanctions and (2) Plaintiffs have failed to establish substantial prejudice and that MicroGen, rather than counsel, was responsible for the violation. But MicroGen should be barred from offering any evidence that it did not produce by the June 29, 2023 deadline, in defending against Plaintiffs' contention that MicroGen has wrongly withheld at least $272,000 in commissions. The undersigned further recommends that the district judge order MicroGen and its counsel to pay Plaintiffs' attorney's fees and costs incurred in connection with prosecuting the motion.

The undersigned therefore recommends that the United States District Judge **GRANT-in-part** and **DENY-in-part** Plaintiffs' Motion for Sanctions. In addition, the undersigned recommends the district judge **DENY** Mr. Ripani's Motion for Leave to File a Sur-Reply. ECF No. 99.

## I.    Background

### A. Plaintiffs' Allegations and MicroGen's Counterclaims

Plaintiffs are former sales representatives of MicroGen. *See* Am. Compl. 2, 5, ECF No. 21. In late 2020, Plaintiff Ferguson secured a COVID-19 testing contract for MicroGen with the State of Colorado (Colorado Contract). *Id.* at 3. By separate agreement, MicroGen subcontracted with Dr. Brooke Allen at Roaring Fork Neurology, PC to collect samples at the testing sites. *Id.* Plaintiffs claim they "were entitled to receive commissions of five dollars per COVID-19 test that [MicroGen] performed[,] split evenly between each of them." *Id.* According to Plaintiffs, MicroGen "began processing samples under the Colorado Contract . . . around mid-November 2020," although the effective date of the Colorado Contract was not until December 17, 2020. *Id.*

For its part, Microgen claims that Plaintiff Ferguson misrepresented to MicroGen that it would be compensated by the State of Colorado for samples submitted for testing between

November 11 and December 16, 2020, i.e., before the contract's effective date. Counter-Compl. 2–3, ECF No. 15. But according to Microgen, the State of Colorado refused to compensate it for the samples processed before the contract's effective date, resulting in an unpaid invoice in the amount of $569,640. *Id.* at 3. MicroGen, in turn, allegedly failed to pay Plaintiffs' commissions for the tests performed prior to the effective date and refused to pay Dr. Allen for the tests she performed during that time. Am. Compl. 3. In "late 2021," however, MicroGen elected to pay Dr. Allen for the samples she collected before the effective date of the contract. *Id.* at 4. To do so, Plaintiffs claim MicroGen withheld their commissions on post-effective date tests "to 'claw back' the amounts it paid Dr. Allen." *Id.*

MicroGen's alleged withholding caused Plaintiffs to file suit for, *inter alia*, breach of contract to recover the unpaid commissions. *Id.* at 5–6. MicroGen asserts counter claims for breach of contract, fraudulent misrepresentation, and negligent misrepresentation. Counter-Compl. 4–6.

### B. Plaintiffs' First Motion to Compel

On March 20, 2023, Plaintiffs filed their first Motion to Compel MicroGen's responses to requests for production (RFP) Nos. 1, 5, 7, 13–15, 17–19 and interrogatories (ROG) Nos. 1–3, 5–6, and 9. ECF No. 19. Plaintiffs' production requests related to: (1) documents and communications concerning the negotiation, terms, drafting, or execution of the Colorado Contract (RFP Nos. 1, 5); (2) documents and communications concerning the amounts allegedly owed and paid by MicroGen to Dr. Allen and withheld from Plaintiffs (RFP Nos. 7, 13–15); and (3) documents reflecting how MicroGen tracked the commissions it purportedly withheld from Plaintiffs (RFP Nos. 17–19). ECF No. 20, at 14–18. As to the interrogatories, ROG Nos. 1–3 requested the factual basis for MicroGen's contentions that (1) it "was not paid roughly $590,000

3

for its services" "due to Plaintiffs' deceit," (2) it "was forced to pay more than $270,000 to compensate" Dr. Allen, and (3) "Plaintiff[s] [are] attempting to recover commissions for which [MicroGen] was never paid." *Id.* at 9–10, 24–25. ROG Nos. 5–6 sought information about the number of COVID-19 tests performed between November 1, 2020, and April 21, 2022, and the number of tests performed during that period for which MicroGen received payment. *Id.* at 10–11, 25–26. Finally, ROG No. 9 asked whether MicroGen paid Plaintiffs commission for all tests performed under the Colorado Contract between December 1, 2021, and April 21, 2022, and sought accompanying support or explanation for its answer. *Id.* at 12, 27. MicroGen untimely served responses to the RFPs and ROGs, raising unsupported objections and responding to some of the requests "subject to" its objections. *See, e.g.*, ECF No. 20, at 3, 6–12, 14–15, 18, 24–27.

The Court granted Plaintiffs' motion, overruled MicroGen's objections to RFP Nos. 1, 5, 7, 13–15, 17–19, and ROG Nos. 1–3, 5–6, 9, and ordered MicroGen to do as follows by June 29, 2023:

1. Produce responsive documents to RFP Nos. 1, 5, 7, 13–15, 17–19;

2. "[C]ertify under oath that all responsive documents have been produced or, to the extent certain documents ha[d] not been produced, to certify the reason(s) the document [was] . . . withheld";

3. Produce electronically stored information (ESI) in accordance with the parties' agreed protocol;

4. Provide a privilege log, to the extent MicroGen is withholding information based on privilege; and

5. Give verified, specific, and fully responsive answers to Plaintiffs' interrogatories.

ECF No. 27 [hereinafter Discovery Order]. Because the Court granted the motion in full, the Court also granted Plaintiffs' subsequent application for attorney's fees under Rule 37(a)(5)(A) and

awarded Plaintiffs' reasonable fees and costs incurred in prosecuting the motion to compel. ECF No. 59.

### C. The Parties' Arguments

MicroGen did not timely comply with the Discovery Order, prompting Plaintiffs to file the instant Motion for Sanctions under Rule 37(b) on July 19, 2023.[2] ECF No. 43. Plaintiffs argue that the Court should sanction MicroGen under Rule 37(b)(2)(A)(i) and (ii). Mot. for Sanctions & Br. in Supp. 6, ECF No. 43 [hereinafter Mot.]. First, Plaintiffs ask the Court to designate as an established fact "that MicroGen's purported non-receipt of payment for services under the Colorado Contract was not due to any deceit by Plaintiffs." *Id.* In Plaintiffs' view, MicroGen's failure to specifically answer ROGs and RFPs, including ROG No. 1 and RFP Nos. 1 and 5, which were intended to develop the factual bases of MicroGen's counterclaims, necessitates the sanction. *Id.* at 6–7. Plaintiffs contend they have been prejudiced by MicroGen's failure because they "have been forced to conduct depositions without th[e] information." *Id.* at 7 & n.19.

Plaintiffs also want the Court to "designate as an established fact . . . that MicroGen has wrongfully withheld . . . $272,000 in commissions that were due and owing to them." *Id.* at 8. Alternatively, or in addition, Plaintiffs maintain that MicroGen should be prohibited "from contesting or offering evidence to counter Plaintiffs' contention that MicroGen has wrongly withheld at least $272,000 in commissions due and owing to Plaintiffs." *Id.* This is because, according to Plaintiffs, MicroGen has not produced documents in response to RFP Nos. 17–19, nor has it fully answered ROG Nos. 5–6 and 9, despite the Court's Discovery Order requiring it

---

[2] Shortly after Plaintiffs filed their motion, the Court stayed the case. *See* ECF Nos. 58, 61. The stay was not lifted until June 4, 2024 (ECF No. 74), at which time the Court ordered the parties to complete briefing. ECF No. 76. The motion became ripe July 1. ECF No. 90.

do so. *Id.* at 8–9. Finally, Plaintiffs seek attorney's fees in connection with their Motion. *Id.* at 9. Plaintiffs do not, however, ask for a specific sum. *Id.*

MicroGen admits it did not timely comply but contends that imposing what it describes as "death penalty" sanctions would be improper. Resp. 1, ECF No. 80. MicroGen explains that one of its attorneys at the time, Daniel Caminiti, "was primarily responsible for all pleading and discovery matters, including responding to written discovery, producing documents, deposing plaintiffs[,] and submitting MicroGen[] [personnel] for their depositions." *Id.* at 3. After entry of the Discovery Order, Mr. Caminiti apparently worked with MicroGen to amend its ROG responses because as of June 30, 2023 (a day after the Court-ordered deadline), the "answers were with [MicroGen] for signature." Def.'s App. 122, ECF No. 80-1.[3] But a week or two after the deadline for complying with the Court's Discovery Order, Mr. Caminiti resigned from the law firm and withdrew as counsel for MicroGen, prompting Michael Ripani of the same firm to enter an appearance.[4] Resp. 4–5; ECF No. 41. According to Mr. Ripani, he "could not comply with this Court's" Discovery Order because of the "deadlines in this case and [his] responsibilities on other cases." *Id.* at 5; Def.'s App. 123–24. In Mr. Ripani's view, his client is not responsible for any delayed or deficient compliance. Resp. 7–8. "Caminiti quit, and that's the reason why MicroGen[] could not satisfy the" Discovery Order. *Id.* at 7.

Shortly after Mr. Ripani assumed a more visible role, the Court stayed the case. ECF Nos. 58, 61. "During the stay of the case, Ripani and a paralegal at the firm devoted approximately 99 hours to responding to all outstanding discovery and complying with this Court's June 22, 2023

---

[3] Page citations to MicroGen's Appendix refer to the electronic page number assigned by the Court's electronic filing system.

[4] Although Mr. Ripani did not formally enter the case until July 20, 2023, when he filed a request to appear pro hac vice (ECF No. 45), his name appears on MicroGen's original Answer dated August 24, 2022, with the statement "Pro Hac Vice Application Forthcoming." ECF No. 8, at 4 (italics omitted). Thus, Mr. Ripani has been involved in this case in some capacity since its inception.

order." Resp. 5. When the Court lifted the stay, MicroGen produced what it believes to be all outstanding discovery. *Id.* at 5–6. MicroGen made several productions, with the most recent being June 14, 2024. *Id.* at 1–2, 5–6.

Based on the foregoing, Microgen argues the sanctions Plaintiffs seek are not justified. In MicroGen's view, there is no evidence it acted in bad faith, Plaintiffs have not been prejudiced, and the delay was due to its attorney's "abrupt" resignation. *Id.* at 1. MicroGen argues these factors counsel against imposition of sanctions. *Id.* at 4–9.

In reply, Plaintiffs dispute MicroGen's assertion that it has now complied with the Court's Discovery Order.[5] Reply 2, ECF No. 90. First, Plaintiffs assert that despite "dump[ing] thousands of documents on Plaintiffs [that MicroGen] collected long before entry of the [Discovery] Order and" that MicroGen "ha[d] [already] deemed irrelevant," MicroGen still has not provided all documents responsive to RFP Nos. 1, 5, 7, and 14. *Id.* at 2–3. Plaintiffs further explain that "it is unknown whether MicroGen has produced all responsive documents and communications responsive to RFP Nos. 13, 15, and 17–19." *Id.* at 5 n.4. Plaintiffs similarly maintain that MicroGen's amended answer to ROG No. 2 remains deficient. *Id.* at 3–4.

In addition, Plaintiffs contend that MicroGen has yet to provide "an unequivocal attestation" under oath that it has produced all responsive documents, as required by the Discovery Order. *Id.* at 4–5. According to Plaintiffs, MicroGen has instead only supplied "evasive 'declarations' and an affidavit from its counsel and two of its employees that merely state

---

[5] When Plaintiffs filed their Motion for Sanctions on July 19, 2023, MicroGen had "not complied with any aspect of the [Discovery] Order." Mot. 4 & n.15. Plaintiffs' Reply, however, focuses on the remaining deficiencies in MicroGen's most recent June 14, 2024 production.

MicroGen has completed certain 'searches' without even meaningfully describing the parameters of those searches." *Id.* at 4; *see* Pls.' Suppl. App. 14, ECF No. 88-1.[6]

Finally, Plaintiffs allege that MicroGen's amended document production, like its original production, does not comply with the parties' ESI protocol. *Id.* at 5. Thus, emails are "cut-off mid conversation" and "missing attachments," and some documents remain illegible. *Id.*

Plaintiffs argue that these persistent deficiencies warrant sanctions. *Id.* at 6–10. In Plaintiffs' view, "MicroGen's ongoing failure to comply with the [Discovery] Order is not because of 'the resignation of an employee' (*i.e.*, Mr. Caminiti)," as he resigned more than one year ago and other attorneys "have appeared on [MicroGen's] behalf," but instead its failure to "rectif[y] MicroGen's ongoing violations of the [Discovery] Order." *Id.* at 6. Plaintiffs further observe that "Mr. Ripani has been involved in this case from the beginning," and he, "as well as MicroGen's local counsel, received Plaintiffs' First RFPs and ROGs" and Plaintiffs' notifications of the deficiencies in the discovery production. *Id.* Plaintiffs reiterate that due to the ongoing delays in discovery, they "have been forced to conduct all depositions without the benefit [of] relevant discovery materials." *Id.* at 7.

Turning to the requested sanctions, Plaintiffs contend that MicroGen has failed to meet its burden of showing that an award of attorney's fees under Rule 37(b)(2)(C) would be unjust. *Id.* at 7–8. Plaintiffs also maintain that designating certain facts is appropriate considering MicroGen's persistent noncompliance with the Discovery Order, and the fact that the requested sanctions relate to the discovery the Court already ordered MicroGen to produce. *Id.* at 8–10. Plaintiffs disagree with MicroGen's characterization of the requested sanctions as "litigation

---

[6] Plaintiffs asked for leave to file a supplemental appendix in support of their Reply (ECF No. 88), which the Court granted. ECF No. 91.

ending" or a "death penalty" because they do not "have the formal effect of ending the litigation." *Id.* at 8 (emphasis omitted).

### D. Motion to File Sur-Reply

On July 15, 2024, the Court granted Plaintiffs Tom Ferguson and Gregg Browne's Unopposed Motion for Leave to Submit Supplemental Appendix in Support of Motion for Sanctions. ECF No. 88. Mr. Ripani now seeks leave to file a sur-reply. ECF No. 99. Mr. Ripani represented MicroGen until June 30, 2024, when MicroGen apparently became a client of a different firm.[7] *Id.* at 1. Mr. Ripani states that he is seeking leave to file a sur-reply to "address . . . comments and exhibits" in Plaintiffs' Reply. *Id.* at 2. But in the proposed Sur-Reply, which is attached to his motion, he also purports to reply on behalf of MicroGen. *See* ECF No. 99-1, at 5 ("This Court should not impose sanctions on MicroGenDX or its attorneys, including Ripani." (emphasis omitted)), 6 (arguing that Plaintiffs' allegations "should not form the basis for the imposition of sanctions on MicroGenDX and its attorneys, including Ripani").

Northern District of Texas "Local Civil Rule 7.1 contemplates the filing of only a brief in support of an opposed motion, a response, and a reply brief." *Nat'l Liab. & Fire Ins. Co. v. Young*, No. 6:19-CV-031-H, 2020 WL 6119912, at *1 (N.D. Tex. Apr. 24, 2020). That is, the Local Rules "do not contemplate sur-replies." *Id.* (citation omitted). Nevertheless, a court may permit a sur-reply "when the movant raises new legal theories or attempts to present new evidence at the reply stage, and only when a party seeks leave of court to file a surreply." *Id.* (citation omitted); *see Mason v. AT&T Servs., Inc.*, No. 3:18-cv-00322-N (BT), 2019 WL 7667212, at *1 (N.D. Tex. Aug. 26, 2019) (explaining that "surreplies are . . . permitted only in 'extraordinary circumstances,'

---

[7] On June 28, 2024, Mr. Ripani filed a motion asking to withdraw as counsel for MicroGen because it is no longer a client of Mr. Ripani's firm. ECF No. 84. That motion has not yet been granted.

such as when necessary to respond to new issues, theories, or arguments raised for the first time in a reply brief" (citation omitted)). Sur-replies are, however, "heavily disfavored." *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, 99 F.4th 770, 774 (5th Cir. 2024) (citation omitted). And the decision "to allow filing a surreply is within the sound discretion of the district court, subject to review for abuse of discretion." *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 749 (5th Cir. 2020) (per curiam).

Mr. Ripani has not demonstrated extraordinary circumstances warranting a sur-reply. He asserts that Plaintiffs have presented "new exhibits," thereby necessitating a sur-reply. ECF No. 99, at 2. The Reply exhibits were not attached to Plaintiffs' Motion; however, because MicroGen purportedly complied with the Discovery Order long after the due date *and* Plaintiffs' filing of the Motion for Sanctions, Plaintiffs could not have provided the exhibits with their Motion, which was filed in July 2023. Moreover, the exhibits seek to address assertions made in MicroGen's Response—i.e., that as of June 14, 2024, MicroGen had complied with the Discovery Order and produced all outstanding information. *See* Resp. 2. Finally, Mr. Ripani's proposed sur-reply amounts to a disagreement with Plaintiffs' characterization of the *current* status of the discovery dispute.[8] It does not seek to challenge the original basis for Plaintiffs' Motion—that MicroGen failed to timely comply with the Discovery Order—but is instead an attempted post-hoc justification for his and/or MicroGen's conduct. Mr. Ripani's firm not only represented MicroGen at the time it violated the Discovery Order, but also did so up until June 30. *See* ECF No. 84.

Mr. Ripani's attempt to "have the last word" illustrates why sur-replies are highly disfavored. *Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001) ("Surreplies, and any other

---

[8] Further, MicroGen did not oppose the filing of the supplemental appendix (ECF No. 88, at 2), and MicroGen is apparently no longer a client of Mr. Ripani's firm. ECF No. 99, at 1; ECF No. 84. Thus, Mr. Ripani's attempt to challenge assertions made in the Reply, particularly to the extent he does so on MicroGen's behalf, is improper.

filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter."). For the reasons outlined above, the undersigned has not considered Mr. Ripani's proposed sur-reply in connection with the analysis herein, and the undersigned recommends that the district judge **DENY** Mr. Ripani's Motion for Leave to File a Sur-Reply. ECF No. 99.

## II.  Discussion

### A. Legal Standard

Rule 37(b) of the Federal Rules of Civil Procedure provides that "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). Those orders "may include the following:"

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A)(i)–(vii). In addition to, or instead of, the foregoing, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C). "A party's discovery conduct is found to be substantially justified under Rule 37 if it is a response to a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action."

11

*S.E.C. v. Kiselak Cap. Grp., LLC*, No. 4:09–CV–256–A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (internal quotation marks and citation omitted)). The party who failed to comply with the discovery order has the burden of showing "that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.*

"The district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks and citation omitted). But when the court imposes the most severe remedies—e.g., dismissing the case—it must make "a finding of bad faith or willful misconduct." *Id.* (citation omitted). For these types of "litigation-ending sanctions (sometimes called death penalty sanctions)," the court must make four findings: "(1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation substantially prejudiced the opposing party; and (4) a lesser sanction would not substantially achieve the desired deterrent effect." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758–59 (5th Cir. 2019) (internal quotation marks, brackets, and citation omitted); *accord Vikas WSP, Ltd. v. Econ. Mud Prods. Co.*, 23 F.4th 442, 454 (5th Cir. 2022) (emphasizing that "to levy a litigation-ending sanction for a discovery violation, the court must make four findings").

In all other circumstances, the court need only "determine the sanctions are just and related to the particular claim which was at issue in the order to provide discovery." *Law Funder*, 924 F.3d at 758 (internal quotation marks and citation omitted). "While the latter requirement reflects the rule of *Hammond Packing*," i.e., that there be a nexus between the sanction and the discovery violation, "the former represents the general due process restrictions on the court's discretion." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982); *see Hammond Packing Co. v. Arkansas*, 212 U.S. 312, 350–51 (1909). Ultimately, "the flagrancy of

a party's behavior must be directly proportionate to the severity of the sanction imposed." *Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993).

### B. MicroGen did not timely comply with the Discovery Order and has yet to fully comport.

MicroGen failed to comply with the June 29, 2023 deadline in the Discovery Order. Resp. 1 (conceding its "admitted tardiness in complying"). Other than generally attributing its noncompliance to Mr. Caminiti, MicroGen provides no substantive explanation for its failure to timely produce the required discovery. *See id.* at 4; *see also* Def.'s App. 121–24 ¶¶ 6–15. And despite knowing as soon as June 30, 2023, that MicroGen had not produced the required discovery, MicroGen and/or Mr. Ripani did not ask the Court for an extension to comply. Def.'s App. 122 ¶ 7 (representing that on June 30 (one day after the deadline), Mr. Caminiti informed Mr. Ripani "that he was working to comply with the discovery order and that answers were with the client for signature"), 122–23 ¶ 12 (maintaining that Mr. Ripani made "a good faith effort to comply with the [Discovery] Order," but making no contention that he sought an extension from the Court).

Instead, Plaintiffs had to file a Motion for Sanctions because MicroGen had not complied with the Discovery Order. The Court then stayed the case until June 4, 2024. ECF Nos. 58, 61, 74. MicroGen asserts that during the stay, it worked to fulfill outstanding discovery requests. Resp. 5. When the Court lifted the stay, MicroGen produced information to Plaintiffs on June 4 and 14. *Id.* at 5–6; Def.'s App. 24–25. But MicroGen made the June 14 production only after Plaintiffs provided a detailed explanation of the ways in which MicroGen's June 4 production was deficient. Def.'s App. 114–15; *see infra* note 10. And even after receiving such notice, MicroGen still did not fully comply.

For example, MicroGen has not certified under oath "with its supplemental [document] production" that it has produced all responsive documents "or, to the extent certain documents

have not been produced, . . . certif[ied] the reason(s) the document is being withheld." ECF No. 27, at 16–17. Instead, MicroGen has attested only that it conducted and completed a search for responsive documents.[9] Pls.' Suppl. App. 14; Def.'s App. 13, 18–19, 23–25. Moreover, the Court found MicroGen's response to ROG No. 2 deficient and directed it to "provide [a] full and complete answer[]" (ECF No. 27, at 21–22), but its amended answer "remains unchanged from the [original] answer."[10] Reply 3–4. *Compare* ECF No. 20, at 25 ("Subject to and without waiving said objection, see Joint Report and documents produced by Defendant pursuant to Rule 26(a), Plaintiffs' First Request for the Production of Documents, and Microgen 000598-000603." (emphasis omitted)), *with* Def.'s App. 92 ("Subject to and without waiving said objection, see Joint Report and documents produced by Defendant pursuant to Rule 26(a), Plaintiffs' First Request for the Production of Documents, and NMICROGEN 000598-000603.").

Two additional examples are worth noting. The Court ordered MicroGen to, *inter alia*, produce all responsive documents to RFP Nos. 1, 5, 7, and 14. ECF No. 27, at 16. Despite this directive, MicroGen "has not even produced the documents Plaintiffs identified as examples of known missing documents, much less the (likely) numerous additional responsive documents Plaintiffs have not yet seen." Reply 3–4; *see* Def.'s App. 114; *see also* Pls.' Suppl. App. 20–21.

---

[9] The fact that MicroGen may have conducted an extensive search or that Mr. Keeley "approve[s] [of] the [discovery] responses" does not satisfy the Court's requirement. MicroGen was "to certify under oath that all responsive documents have been produced" or the reason why certain documents were not produced. ECF No. 27, at 16–17. Mr. Keeley's declaration makes no such attestation, and MicroGen points to no other attestation reflecting compliance.

[10] MicroGen's Response implies Plaintiffs are demanding that MicroGen provide discovery above that required by the Discovery Order. Resp. 1–2 ("MicroGen[] provided all discovery responses (even those that were not yet due) to Plaintiffs, only to find out on June 10, 2024, that Plaintiffs still did not think that MicroGen[] complied with this Court's order."). MicroGen's blatant refusal to modify its response to ROG No. 2 perfectly illustrates that it is MicroGen—not Plaintiffs—that have abused the discovery process. Plaintiffs should not, at this stage, have to advise MicroGen request-by-request of the ways in which its responses are deficient, particularly in light of the twenty-three page Discovery Order giving MicroGen clear instructions for curing such deficiencies.

And despite ordering MicroGen to comply with the agreed-upon ESI protocol (ECF No. 27, at 17–19), it apparently has not done so. Reply 5–6; *see* Def.'s App. 114–15.

In sum, MicroGen failed to timely comply with the June 29, 2023 deadline in the Discovery Order. Resp. 1 (acknowledging its "admitted tardiness in complying"). And more than one year later, MicroGen still has not fully conformed.

## C. The undersigned recommends the district judge deny Plaintiffs' request to designate established facts but grant their request to prohibit MicroGen from using certain evidence.

Considering MicroGen's noncompliance, Plaintiffs ask the Court to designate as established the following statements: (1) MicroGen's purported non-receipt of payment from the Colorado Contract was not due to Plaintiffs' fraud; and (2) MicroGen wrongly withheld $272,000 in commissions from Plaintiffs. Mot. 6, 8. In Plaintiffs' view, "the requested sanction is appropriate because it is the least severe sanction that is adequate to achieve the proper functions of Rule 37(b)(2) in these circumstances." *Id.* at 7.

MicroGen asserts that Plaintiffs seek death penalty sanctions (Resp. 1, 6–9)—a position Plaintiffs dispute. Reply 8, 10. The Fifth Circuit has observed that "caselaw is unclear about whether an order striking a defendant's pleadings, without more, is a litigation-ending sanction." *Law Funder*, 924 F.3d at 760. If striking pleadings is not definitively a death-penalty sanction, it stands to reason that designating certain facts is not litigation-ending. *Cf. Williams v. Am. Honda Motor Co., Inc.*, No. 22-40224, 2023 WL 3739095, at *3 (5th Cir. May 31, 2023) (per curiam) (explaining that the Fifth Circuit applies the four factors "only when a sanction order [itself] has the formal effect of ending the litigation"—not when the order merely causes the ultimate dismissal). Here, however, Plaintiffs arguably ask the Court to do more than designate facts.

Plaintiffs purport to seek sanctions under Rule 37(b)(2)(A)(i), i.e., that certain "facts" should be designated as established. *Id.* at 6, 8. But in effect, Plaintiffs ask the Court to make adverse inferences or legal conclusions—not to designate *facts*. First, Plaintiffs want the Court to direct that any non-receipt of payment under the Colorado Contract was not due to Plaintiffs' deceit. *Id.* at 6. They relate this request to ROG No. 1, as well as RFP Nos. 1 and 5. *Id.* at 6–7 & n.17. Such a finding goes to the ultimate issues underlying MicroGen's counterclaims—whether Plaintiff Ferguson made unlawful misrepresentations to MicroGen, leading it to believe it would be compensated for certain test samples under the Colorado Contract. *See* Counter-Compl. 4–6 (asserting breach of contract and fraudulent misrepresentation claims based on Plaintiffs' alleged misrepresentations).

Similarly, Plaintiffs' request to designate as fact that MicroGen wrongly withheld $272,000 in commissions goes to Plaintiffs' claims for, *inter alia*, breach of contract and would eliminate Plaintiffs' need to prove damages.[11] Indeed, Plaintiffs allege that MicroGen "materially breached . . . agreements [they had with MicroGen] by wrongfully refusing to pay Plaintiffs over $272,000 in commissions." Am. Compl. 5 ¶ 30.

Ultimately, the Court need not resolve whether the requested sanctions are litigation-ending. This is because even if they are, Plaintiffs have failed to establish at least two of the elements necessary to obtain them. MicroGen's noncompliance has likely hindered Plaintiffs' trial preparation, but other than generally alleging that they were forced to conduct depositions without certain discovery, Plaintiffs do not argue that MicroGen's conduct substantially prejudiced their ability to present or defend claims. Mot. 7 & n.19; Reply 7; *see Better Bags, Inc. v. Ill. Tool Works,*

---

[11] MicroGen has admitted that it withheld $272,000 in commissions from Plaintiffs. Def.'s App. 99. But whether the withholding was wrongful, or constituted a breach of contract, is a question Plaintiffs will have to prove at trial.

*Inc.*, 939 F. Supp. 2d 737, 753 (S.D. Tex. 2013) ("Preclusion of evidence and/or defenses . . . are drastic remedies generally confined to exceptional cases where a party's failure to provide requested discovery results in prejudice to the requesting party."); *Munoz*, 924 F.3d at 758 (recognizing that violation must result in, *inter alia*, "substantial prejudice"). Indeed, Plaintiffs filed a Partial Motion for Summary Judgment (ECF No. 85) the same day they filed their Reply, and they make no contention—either in their Reply or in the summary judgment motion—that they were unable to properly support the motion due to missing discovery. *See* Reply 7; ECF Nos. 86, 87.

Moreover, the record is unclear as to whether MicroGen is accountable for the discovery violations. MicroGen's counsel asserts that their client "was not responsible" (Resp. 7), and Plaintiffs do not present information to the contrary. These factors counsel against granting Plaintiffs' request to designate "facts."

A few additional considerations also weigh against imposing the stiff sanctions Plaintiffs seek. The deadline for dispositive motions has only recently expired and could be extended by the Court, if necessary, without undue delay or prejudice. ECF No. 74, at 1. In addition, MicroGen's conduct, while certainly sanctionable, does not involve violating multiple court orders, and the order in question did not include a warning to MicroGen that it would be subject to Rule 37(b)(2) sanctions, let alone ones deeming certain facts as true.

For these reasons, the undersigned recommends the district judge deny Plaintiffs' request to designate facts as true. *Chilcutt*, 4 F.3d at 1322 n.23 ("[T]he flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed."); *Fu v. Chin*, No. 3:18-cv-2066-N-BN, 2020 WL 7049161, at *4 (N.D. Tex. Oct. 23, 2020) ("[C]ourts have found sanctions excluding evidence or claims of damages appropriate where, for example, a party instructs its

witness to violate a court order."), *R. & R. adopted by* 2020 WL 7047053 (N.D. Tex. Dec. 1, 2020);

*Blessey Marine Servs., Inc. v. Jeffboat, LLC*, No. 10-1863, 2011 WL 3349844, at *6 (E.D. La.

Aug. 3, 2011) (concluding deeming personal jurisdiction as established would not be "just" given

that defendant had merely failed to comply with one discovery order by "not sufficiently answering

one interrogatory and not providing timely responses to some of the requests for production"); *cf.*

*Compaq Comput. Corp. v. Ergonome Inc.*, 387 F.3d 403, 412–14 & n.10 (5th Cir. 2004) (finding

district court did not err by designating fact as true, where court cautioned defendant it would do

so if defendant failed to provide discovery and defendant egregiously abused litigation and

discovery process, including "creatively refus[ing] to provide the discovery" for more than two

years); *Boxer F2, L.P. v. Bronchick*, 722 F. App'x 791, 795, 797 (10th Cir. 2018) (affirming district

court's imposition of sanctions under Rule 37(b)(2)(A)(i), where defendant did not comply with

order compelling discovery, court then cautioned defendant he would be subject to sanctions if he

did not comply, and after "[s]everal untimely or incomplete productions, another court order, an

on-site inspection, and a full evidentiary hearing later, the magistrate judge granted [plaintiff's]

request for sanctions").

Plaintiffs assert in the alternative that "the Court should prohibit MicroGen from contesting

or offering evidence to counter Plaintiffs' contention that MicroGen has wrongly withheld at least

$272,000 in commissions." Mot. 8. They link these sanctions with RFP Nos. 17–19 and ROG

Nos. 5–6 and 9. *Id.* The undersigned recommends the district judge grant that request in part.

MicroGen did not timely comply with the Discovery Order—it concedes as much. Resp.

1. This alone warrants sanctions. Now, more than one year after entry of the Discovery Order,

MicroGen has *still* not fully complied with its discovery obligations. As a result, MicroGen should

be barred from offering into evidence or using for any other purpose discovery that it failed to

produce by the June 29, 2023 deadline in defending against Plaintiffs' contention that MicroGen breached their contracts by withholding at least $272,000 in commissions.[12] *See, e.g., Quantas Healthcare Mgmt., LLC v. Sun City Emergency Room, LLC*, No. 3:23-cv-891-K, 2024 WL 1520568, at \*16 (N.D. Tex. Apr. 8, 2024) (ordering, among other things, that plaintiff and counter-defendant, "in defending against [defendants/counter-plaintiffs'] claims, be prohibited from relying on evidence it failed to produce by deadline in order granting motion to compel); *Taghavi v. Soto*, No. 3:21-cv-2557-S-BN, 2023 WL 6544905, at \*13 (N.D. Tex. Oct. 6, 2023) (prohibiting recalcitrant party "from presenting testimony or documentary evidence regarding" certain topics after movant "unsuccessfully sought discovery"). "The discovery deadline has now passed," as has the dispositive motions deadline. *Quantas Healthcare*, 2024 WL 1520568, at \*16. "The time in which [MicroGen] will be allowed to benefit from its violations of its discovery obligations is at an end." *Id.*

The district judge should require MicroGen, within seven days of any order adopting this recommendation, to serve on Plaintiffs any outstanding discovery ordered by the June 22, 2023, Discovery Order and to otherwise fully comply, including producing documents in accordance with the parties' ESI protocol and to certify under oath that all responsive documents have been produced or, to the extent certain documents have not been produced, to certify the reason(s) for withholding—e.g., it does not exist, MicroGen has no such document in its possession, privilege, etc. ECF No. 27.

The Court further cautions MicroGen that if it does not fully comply, upon Plaintiffs' motion, MicroGen may be subject to the imposition of more severe sanctions under Rule 37(b),

---

[12] Plaintiffs want the Court to prohibit MicroGen "from contesting *or* offering evidence to counter Plaintiffs' contention that MicroGen" unlawfully withheld commissions. Mot. 8 (emphasis added). The undersigned finds that barring MicroGen from challenging Plaintiffs' evidence would be improper.

including designating facts as established, prohibiting it from supporting claims, dismissing its counterclaims, or rendering default judgment. FED. R. CIV. P. 37(b)(2)(A). "[D]iscovery delays are serious, especially when they are part of a pattern." *Calsep A/S v. Dabral*, 84 F.4th 304, 313 (5th Cir. 2023). And here, MicroGen has already produced untimely, woefully deficient discovery responses at least twice. *See* ECF No. 27; *supra* Section II.B. "Knowingly ignoring an obligation, especially multiple times, may alone be enough to find bad faith." *Dabral*, 84 F.4th at 314; *see also Bell v. Texaco, Inc.*, 493 F. App'x 587, 593–94 (5th Cir. 2012) (per curiam) (affirming district court's conclusion that plaintiff's repeated violations of discovery orders "constituted willful noncompliance" justifying dismissal of the case, where district court "warned of the possibility of sanctions and personally instructed on how to comply" but plaintiff still disobeyed).

**D. The district judge should require MicroGen and its counsel to pay Plaintiffs' reasonable attorney's fees and costs in connection with preparing and filing the Motion for Sanctions.**

Under Rule 37, instead of or in addition to imposing sanctions under (b)(2)(A), "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C) (emphasis added). As Plaintiffs highlight in their Reply and as discussed herein, MicroGen has yet to fully comply with the Court's Discovery Order. Reply 2–5; *supra* Section II.B.

MicroGen has not shown, or even argued, that its noncompliance is substantially justified. *See* Resp. 1–9 (failing to address whether an award of attorney's fees is justified); *id.* at 8 (acknowledging that "Plaintiffs have incurred attorneys' fees" prosecuting the Motion for Sanctions). It generally blames its failures on Mr. Caminiti's resignation. *Id.* at 7. Mr. Caminiti resigned more than one year ago, and he resigned *after* the Discovery Order deadline. Moreover,

MicroGen *still* has not fully conformed. Thus, the undersigned recommends that the district judge require MicroGen and its counsel[13] to reimburse Plaintiffs' reasonable attorney's fees and costs incurred in drafting and prosecuting their Motion for Sanctions (ECF No. 43), Reply (ECF No. 90), and appendices in support (ECF Nos. 44, 88).

If the district judge adopts the undersigned's recommendation to award fees and costs, the district judge should direct Plaintiffs' and MicroGen's counsel to confer by videoconference or in person about the reasonable amount of attorney's fees and costs to be awarded under Rule 37(b)(2)(C). The parties should be ordered to file a joint report within fourteen days of any order adopting, which notifies the Court of the results of the conference. If the parties reach agreement as to the amount of attorney's fees and costs to be awarded, Plaintiffs' counsel should send an agreed proposed order to the Court at Hendrix_Orders@txnd.uscourts.gov within fourteen days of any order adopting this recommendation.

If the parties do not reach agreement as to the amount of fees and costs, the district judge should require Plaintiffs' counsel to file, no later than twenty-one days of any order adopting the recommendation, an application with supporting evidence establishing the amount of reasonable attorney's fees and costs to be awarded under Rule 37(b)(2)(C). The application should contain documentation evidencing the "lodestar" calculation, including affidavits and detailed billing records and citations to relevant authorities, as well as the itemized number of hours expended, and reasonable rate(s) requested. If Plaintiffs file an application, MicroGen and its counsel, including former attorneys such as Mr. Ripani, should file a response within fourteen days as to the (1) reasonableness of any award and (2) apportionment of such award, and Plaintiff should file any reply within seven days after being served with MicroGen's response.

---

[13] "Counsel" refers to all of MicroGen's attorneys, including local counsel, during the pendency of this action between June 29, 2023 (the day Court-ordered discovery was due), and July 1, 2024 (the day Plaintiffs filed their Reply).

### III.   Recommendation

For the reasons set forth above, the undersigned recommends the United States District Judge **GRANT-in-part** and **DENY-in-part** Plaintiffs' Motion for Sanctions.   ECF No. 43. Specifically, the undersigned recommends the district judge:

1. Deny Plaintiffs' request to designate certain facts;

2. Grant Plaintiffs' request under Rule 37(b)(2)(A)(ii) and prohibit MicroGen from offering into evidence or using for any other purpose all discovery that it failed to produce by the June 29, 2023 deadline, in defending against Plaintiffs' contention that MicroGen breached their contracts by withholding at least $272,000 in commissions, but deny Plaintiffs' request to bar MicroGen from challenging evidence introduced by Plaintiffs;

3. Order MicroGen to fully comply with the June 22, 2023 Discovery Order—as discussed herein—within seven days of any order adopting this recommendation; and

4. Grant Plaintiffs' request to award attorney's fees and costs under Rule 37(b)(2)(C) and require the parties to confer and either (a) submit a joint proposed order regarding the amount of attorney's fees and costs, or (b) brief the issue, if the parties cannot agree on the amount.

The undersigned further recommends the district judge **DENY** Mr. Ripani's Motion for Leave to File a Sur-Reply.  ECF No. 99.

### IV.   Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 31, 2024.

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE